Thanks everyone for your patience. We're addressing a technical matter, but we are ready to hear the next case. Berkelhammer v. ADP Total Source Group, appellant number 22-1618. Appellant number 22-1618. I plead the court that John Sawyers, representing the plaintiffs, Ms. Berkelhammer and Ms. Ruiz, I'd like to reserve three minutes for rebuttal. Be granted. Congress' goals in enacting ERISA included establishing a fiduciary standard of conduct for those entrusted with managing retirement assets, granting employees a right to protect their retirement benefits through civil actions in federal court. The particular civil action brought here, though, was a derivative action on behalf of the plan. It's a fiduciary duty, correct? It was. And does that mean that it's a claim that belongs to the plan? My answer to that is the claim belongs both to the plan and to the plaintiff. And we can look at a few different things for that. One is the statutory text itself. It unambiguously authorizes the plaintiffs to proceed in a judicial forum, similar to the EEOC in the Waffle House case, bringing a derivative claim on behalf of an employee who had been discriminated against. So the statute itself, this court's decision in Graydon, which distinguished a fiduciary ERISA derivative nature of that type of claim compared to a corporate derivative claim, the harm in a – but that was – Graydon was looking at the standing analysis, right? It wasn't – Well, I think what it does recognize is that the loss to the participants is direct. The purpose of a retirement plan is a mechanism to hold the employee's money, to hold it in trust until retirement age. Graydon emphasized that all of the plan's money is allocated to individual accounts, and any loss to the plan is an injury to a participant, which is a direct interest that doesn't exist in the corporate derivative context where the shareholder's – any loss to them is indirect. But the remedy that would be secured if you were to prevail in this action under a free fiduciary duty claim would belong to the plan, and ultimately would dissolve to the beneficiaries, but it's the plan who gets to recover, correct? The plan, right, takes legal title for the recovery and then it's distributed to the beneficiaries. And so why doesn't that make it the plan's claim? Even though the beneficiary's benefit belongs to the plan, as said – as we said in Graydon's sharing plan? Well, I don't know that it was said in those terms that it belongs to the plan. It was said that the claims are derivative in nature, but the statute gives the right to the participant to bring the claim. So the claim, if it belongs to the plan in part, it also belongs to the participant in part. And the participants who participate in the plan, their right – the purpose of their right is to protect their retirement benefits. And so the remedy, it's for their benefit. They're the true – the real parties in interest in the suit. So if I understand you, your argument in front of us today is the claim belongs to both the plaintiff and the plan. No counselor was involved in Monroe. What happened in Monroe didn't, from what I could tell, influence the district court. But the reason I want to ask you about Monroe is there must have been legal authority for the position taken there, as compared to the legal authority you want to rely on here. So can you explain why Monroe there was argument that there were plan claims, but here that's not the argument being made? And what's the legal tether? It's not because – it's not judicial inconsistency I'm talking about. Lawyers can make arguments that they need to make. This is really educating on the legal grounding of each of those positions. Well, in Monroe, the individual employees signed employment contracts that said they would arbitrate claims that the employee has against the university. And so the Ninth Circuit said that language can't be stretched to include claims that other entities have, meaning the plan. And the claims, so they don't belong solely to the employee, they belong partially to the plan. And in Monroe, the court didn't shy away from its prior statement in Comer that – You're not really asking me about the court. I'm asking about the legal arguments being made by the parties in Monroe versus here. I know what the court said, but I was wondering what was the legal tether that was relied upon by plaintiffs in Monroe to say the claims belong to the plan as compared to making an argument that the claims here belong to the individual and plan? Well, because it would be inconsistent to say that – it would be inconsistent with the language of the arbitration agreement to say that the 50282 claim is a claim that the participant has against the university because – That's a scope argument, is that what you're saying? Right, yes. And the court, it didn't shy away from what it said in Comer that the cause of action belongs to the individual plaintiff. It cited Comer with approval on that point, but – But that's inconsistent with our precedent, where the sharing clause said specifically, plan claims, quote, belong to the plan based on duties owed to the plan, close quote. Even if we would accept Comer's – on the Ninth Circuit. Well, it certainly – I don't believe it said the claim belongs to the plaintiff. I was reading from – just so you know, it was at 589, F3rd, F594. So that was reading from the case. Right. And I know part of what was cited was how the plaintiff had characterized it. But in any event, that statement from sharing isn't necessarily saying that it belongs to the plan to the exclusion of the plaintiff because that reading would arguably be inconsistent with what Graydon said in footnote 6, that the money has to be distributed to the participants and that they suffer a direct loss. I think it can be reconciled in that way, that it does belong to the plan, but it also directs the participants' interest directly. I think Judge Fontaine has a question. I was just going to ask, do you need a derivative suit in federal court without plan consent? Don't you need the consent of the plaintiff? No. And that's another distinction from a derivative corporate action. The participants can file suit. They don't have to obtain the plan's permission. They don't have to obtain the plan's consent on what is requested in the prayer for relief. And those are similarities to the EEOC Waffle House situation. The EEOC had the right to control its own action, didn't need the employee's permission to file suit. And that was a strong indication to the court that the EEOC was not bound by the arbitration agreement there. So the same is true here. The only requirement somewhat similar to that is notice has to be given to the Secretary of Labor, who would then have an opportunity to intervene in the case. But there's no requirement for plan consent or fiduciary consent. To bring suit. To bring the suit, right. You argue in your brief that all participants in the litigation need to have consented to arbitration, if I understood your brief correctly. So that would be the entity being sued and, from your point of view, the plan on behalf of the plan. Am I correct? That all have to consent? I don't think the court has to go that far. Really, our point is that the named party has to have consented at least.  The reading that all the parties would have to consent, that would be a way to harmonize our proposed rule with Hawkins. Because Hawkins is a case that said the plan has to have consented in addition to the participants. Well, you're saying that's what Hawkins said? Because the arbitration agreement in Hawkins was much like Monroe, it was between the employee and the employer. The plan had no role in any of that, correct? Right, it was an individual employment agreement. Where in this situation, we have the defendant who agreed to arbitrate, the plan who agreed to arbitrate, and the only extra actor here is one acting on the plan's behalf. Shouldn't the actor have to take on that which the principal has agreed to do? No, I think that's inconsistent with the statute giving the right to the participants to file suits, and it's also inconsistent with the law of trust, where a beneficiary is not bound by the trustee's agreements on behalf of the plan. But a trustee in bankruptcy is, right? A trustee in bankruptcy is, that's right. Right, but ERISA's roots are in the law of trust, and in that sense, the participants shouldn't be held bound to the agreement made by the fiduciary. But the law of trust has to be subject to the ERISA statutory theme, which says fiduciaries have positions of trust. Congress has decided if the fiduciary has breached that, it's given a clause of action, and it's delegated to the beneficiary, the secretary, to bring suit for the plan. All of that consisted with holding all the parties to their agreements, who are acting as if they were the party, standing in their shoes is the language I've seen out of the district court hearings and other courts. I think it's inconsistent because Congress stated that it wanted to give the plan participants the right to bring suit in federal court, and here, the fiduciaries have erased that right under the district court's reasoning, without even giving them notice that this agreement existed. What if the plan had been amended to have an arbitration clause? Well, that's an important distinction. If it had, the statute requires notice to the participant because it's a material modification to the plan. You have some case law that would say that sort of modification would require notice? Because certainly if a plan were modified in a way that would influence the dollars that the beneficiary would get, that would have to be subject to notice. But do you have some case law that says that you have to give notice? And we're going to add basically a form selection clause. I don't have a case specifically saying that. I know we cited the statutory provisions discussing the material modification requirement. So if the plan is amended, the participant is going to know about that, and then by continuing in the plan thereafter, that can be inferred as consent. If plan participants are bound to arbitrate by an arbitration clause, would they be allowed to participate in the plan? Right. I think that was Judge Schwartz's question. I think that's possible, and an important reason why is because they would have notice of that and would have the option. They would have some way to protect their rights. They could decide they don't want to participate in the plan anymore. They could move to an IRA instead of a 401k plan if they didn't like that provision. But here, it was completely unknown to the participants, and there's no way to infer consent in these circumstances. I'm back on rebuttal. Thank you. Thank you. Your Honor, may it please the Court, Megan Fergal on behalf of Defendant Appellee, NSP Retirement, Inc. I'd actually like to start with the Court's decision in Pritzker because I think it grapples with some of the issues that appellant was raising in their argument with respect to the right to litigate. In Pritzker, the Court contended with an argument that the trustees there who had agreed to arbitrate in an agreement with a plan service provider, an asset manager in that case, that the plan trustees were not eligible to waive plan participants' right to litigate because of plan participants' rights under the statute. And the Court in Pritzker held that, no, the trustees were eligible to bind participants to arbitration. But didn't really Pritzker actually simply say that arrested claims are arbitrable? Wasn't that really what Pritzker was teaching us? That's half of Pritzker. But the other half of Pritzker is applying that holding to the facts of that case. And on the facts of that case, the trustees fought a lawsuit on behalf of the plan against a plan service provider for alleged breach of duty. The plan's agreement with the plan service provider included an arbitration agreement, but not every defendant to the lawsuit had signed that agreement. So the Court was engaging with what was essentially an analog to the Abdi Rahman case that the Court was presented with yesterday, whether a non-signatory to an arbitration agreement could invoke the arbitration agreement against a plan. Here we have a somewhat different situation because we have a non-signatory plaintiff attempting to avoid the plan's arbitration agreement with a third-party service provider. And Pritzker I raised to the Court because it directly deals with the worry that trustees might frivolously sign away plan participants' own rights to litigate by entering into arbitration agreements with service providers. The Court rejected that because the Court recognized that trustees themselves labor under duties of prudence and loyalty that oblige them to strike prudent and loyal agreements. But our plaintiffs here are beneficiaries of this. They're not negotiating the agreement. They have no role like the trustees could have played in the Pritzker case, right? So these plaintiffs, as so goes your adversary's argument, never agreed, didn't even know that there was an arbitration clause. If arbitration is a matter of consent, then why should these plaintiffs be bound by something they never consented to? The plan's consent is sufficient because in a derivative claim, the participants' interests are congruent with the plan's interests. That's the Court's analysis in Barrow Clause. It's also the premise of the Court's analysis in Pritzker. I was saying, so how could you be bound to an agreement when you don't sign the agreement? Well, in a derivative— It's going to be an agreement, then, if it doesn't matter whether you sign it or don't sign it. It's not unlike Your Honor's decision in Cardiomet, in fact, right? The right to litigate travels with a claim and the obligation to arbitrate travels with a claim. When the claim being asserted belongs to a principal, the individual asserting the principal's claim has no greater and no lesser rights than the principal.  And here we have the exact same scenario, only it's the right to arbitrate that travels with the claim, not the right to litigate. Can you talk to me about Viking? Viking was not—it was raised— I didn't see a response from you folks, of course, because it was in reply. Of course. Tell me about Viking. Viking allowed a positive plaintiff to bring an individual claim, not outstanding issues of the state. The state did not consent. It requires arbitration. Explain to me how Viking— It doesn't help your adversary, because your adversary is going to have to lean on it. So what occupied the Supreme— Most of what's under debate in Viking is state law, and what state law requires in respect of the arbitration of claims under PACA, a state statute. What concerned the Supreme Court in Viking River was the absence of consent by the defendant. In that case, California's anti-claim-splitting rule obliged the defendant either to agree to a mass arbitration proceeding that encompassed individuals as to whom the defendant had not consented to arbitration, or to forego an arbitral forum and deal with the litigation. But the defendants there agreed to arbitration, or tried to get out of arbitration for certain types of claims. The defendants agreed to arbitration with the individual plaintiff, and the Supreme Court of the United States held that it was possible to distinguish between individual claims that the plaintiff had consented to and non-individual claims as to which the plaintiff had no distinct interest. And the key to the Supreme Court's holding there was simply that the operation of state law to force defendants either into a mass arbitral proceeding or to forego arbitration was precluded by the FAA because it disincentivized access to arbitration on an individual basis to which the parties had agreed. But here we have plaintiffs who didn't consent, and they're being forced into arbitration. Because under ERISA, they have a derivative claim. And here, in contrast to PAGA and how it works under California law, ERISA, as this court has recognized, provides that a 50282 claim belongs to the plan. It operates to restore losses to the plan under ERISA 409. And the plan participant's interests are fully congruent with the plan and derive entirely from the plan's interest. And so you're saying the California State Attorney General, who shoes the plaintiffs in Vikings to that? Well, what's really interesting about that element of Viking is actually that the individual plaintiff's arbitration agreement was not affected there under PAGA to require the Attorney General to arbitrate their claims or to require any other absent member who, under California law, the individual could, in theory, represent. It could not bind them to arbitration. It still seems to me to go against very traditional contract principles to determine that somebody who doesn't sign a contract should never enter the country. Well, the rule in this circuit dates back to the Barrow Clause decision in 1985, where the court recognized that in a derivative claim, the plaintiff is standing in the shoes of the party that has agreed to arbitrate and has no more and no less rights than that party has. Now, we also advance an equitable estoppel argument, which relies on more traditional principles of contract analysis. And as we've explained in our briefs and in, again, the letter yesterday, here, plaintiffs have claimed the benefit of the contract to a degree that would permit equitable estoppel principles also to require arbitration, but you don't even need to get there under Barrow Clause. Wouldn't that be troubling or difficult for you? Because this plaintiff represents they knew nothing about the agreement, so how could they have a contract claim based on something they didn't know about? Or how does their claim directly relate to the contract? The claim that the plaintiffs are asserting in this case is based on the relationship between NSP and the plan. So Judge Chesler's opinion and Gavir and the decision from the District of Pennsylvania, SPAS, both apply Barrow Clause to circumstances exactly like this, in circumstances in which the participant is seeking to vindicate obligations that a service provider to the plan agreed to assume in a contract with the plan. From NSP's perspective, NSP contracted with the plan and agreed that all disputes between the plan and NSP would be arbitrated, and that was beneficial to the plan. I think one element of plaintiff's argument is that an agreement to arbitrate somehow contravenes the participant's interest. The court rejected that in Pritzker, but beyond that, the agreement between the plan and NSP enabled the plan to insist on arbitration of NSP's claims against the plan, which would ultimately redoubt the participant's interest by lowering costs. I'm asking about your equitable estoppel argument. How is the claim of these plaintiffs directly based on the complaint? You said that it's because it created a relationship put together by the plan's decision. But that doesn't make it directly related to a claim in a contract provision, does it? Oh, to answer your earlier question, the investment advisory agreement is an agreement in which NSP agreed to assume fiduciary responsibility for certain plan functions, for investment advice to the plan. Under ERISA, a person is a fiduciary to the extent they have authority or responsibility for plan decisions. Plaintiffs are asserting that NSP breached the responsibilities that it agreed to assume under the contract. To resolve the plaintiff's claims, it would be necessary to analyze the scope of the commitments that NSP made in its agreement. The fiduciary responsibilities described in the agreement to determine whether NSP had breached its duties. The case is whether you signed or not. You're still bound by the plan. Whether you signed it, agreed, or whether you don't agree. That's right. Under both the derivative theory and under an equitable estoppel theory, the derivative theory is the most straightforward. The court doesn't need to analyze whether the plaintiffs availed themselves of the benefit of the investment advice that NSP agreed to provide because the plaintiffs stand in the plan's shoes. Their interests are not just congruent, they're identical with respect to a 502A2 claim. If the Supreme Court were to grant cert in Hawkins, what should we do? Do you think that that case has anything to do with what we're doing here? I think Hawkins is like Monroe, so I don't think the court need wait for the court to decide whether after yesterday's brief to grant cert in Hawkins. Hawkins, as Your Honor noted before, involved an individual agreement to arbitrate. The question was whether the individual can bind the plan to its agreement. It's not unlike Schering-Plough's analysis of whether an individual's release could bind the plan. Do you think it's more like a scope, like scope of the agreement, focus as opposed to here where it's statutory, naturally created? I think it's whether, it's not just scope, I think it's whether an agreement exists between the plan and the litigant that would bind the plan to arbitrate its claim. So the way that your client prevails is if we conclude that a derivative claim requires us to consider the claim holder's 502. It's only their consent that matters. That's right. In order for you to prevail. Under the derivative claim, that would be the right analysis. Under an equitable estoppel claim, the court's analysis would be more capacious and would encompass whether the participants who are participating in the plan as these individuals did avail themselves of the investment advice, and are asserting rights that arise and derive from the plan's agreement with NFP such that the plaintiff should not be, should be estopped from disclaiming an obligation to comply with the arbitration element of that agreement. I'm going to go off topic just a little bit. In this case, your client and the other defendants filed a motion to dismiss, and then there was a request to hold off on deciding that motion to dismiss to allow for the compulsion of the arbitration motion. Am I correct about that? Well, the motion to dismiss itself said, please, your honor, do not decide this. We will be filing a motion to compel shortly. The history of the case is that there were two plaintiffs that filed parallel actions. One of the plaintiffs had agreed to arbitration. We did not receive word whether the other set of plaintiffs agreed until the day that the response, that this response to the pleading was due. So, NFP filed a provisional motion to dismiss that. Judge Salas, please do not decide this unless you resolve the motion to compel that's coming against us. Thank you. So here's the case, Ninth Circuit. Comer versus? Yes. Familiar with? Am I familiar? Yes, I am. Can you distinguish that case from this one? Yes. Comer, as Judge Schwartz indicated in questioning my brother, in part relied on equitable estoppel and third-party beneficiary analysis that deviates from this court's precedent. It also suggested that 502A2 claims do not belong to the plan, and on that basis declined to reach a conclusion that a 502A2 claim is derivative and binds a participant who asserts it. That holding, or dicta, or statement such as it was has been superseded not only by LaRue, but also by decisions within this court recognizing that 502A2 claims are unequivocally derivative. And, of course, Comer posed no obstacle to the Ninth Circuit itself in Monroe and in the Dorman decision when those courts did take up the derivative analysis. I might offer just one observation about Dorman, if I may, because I know that my adversary points to observations in that decision that the plan participant did, in fact, participate in the plan while the arbitration agreement was in effect. I wanted to bring to the court's attention that the published opinion in Dorman makes clear that there was an appeal from a motion for reconsideration that the court also had to decide. The defendant there had moved for consideration of the court's factual error in finding that the participants did not participate in the plan while the arbitration provision was in effect. That was wrong as a matter of fact. The defendant moved for reconsideration, the motion was denied, and that was part of the appeal that the court resolved in the memorandum of disposition in that case. Thank you, Counsel. Thank you, Your Honor. Thank you. Counsel's point about Pritzker and how arbitration is generally beneficial, that's really not relevant here. If the positive attributes in arbitration outweigh the need for consent, the consent requirement would no longer exist. Now, the CardioNet case, Counsel described that as a principal-agent situation, saying that the agreement to arbitrate travels with the claim, but a trust is not an agency, and that's another point that Comer makes. A beneficiary is not an agent of the plan, and the fiduciary is not an agent of the beneficiary, so the fiduciary's agreement on behalf of the plan does not apply under an agency theory. The Barraclaw case, that was a single participant who signed an agreement, and his beneficiaries were bound by that agreement. Right, but that's our case. Isn't that our case? Absolutely, it's not our case, because they're the named plaintiff who signed an agreement. The beneficiaries are equivalent to contractual assignees, or heirs, if you will. Their right to the account arises from the contract language. The participant can designate who will inherit his account upon his death. So that is truly an identical claim that the beneficiary is bringing related to the same account in the plan. Bevere and the district court here extended that, interpreted the language about the primary beneficiary, meaning the plan participant, to be extended that to the plan. But the participant, again, has the individual right to bring the suit to recover planned losses, of which it will receive a portion. If I could draw your attention back to Burraclaw, Burraclaw had five folks. One was Mr. Burraclaw, the other main parties were the beneficiary, the contingent beneficiaries. Correct. So if your focus is on, we have to look at what the main parties did. Burraclaw was a case where all the main parties did not agree to arbitration, and the court held them bound to what the principle decided. So don't we have to follow Burraclaw's analytical framework? Again, I don't think so, because a beneficiary is akin to a contractual assignee. And what Thole says, the Supreme Court is, a participant bringing suit under 50282 is not a contractual or legal assignee of the plan. So that's an important distinction. And Bevere's equitable estoppel test, it's not even clear what principle it's relying on, but it's inconsistent with this court's later equitable estoppel decisions, such as DuPont, Griswold, O'Hanlon, and Abdurrahman. But the 5132A-2, among those who can be main parties, are beneficiaries. They become beneficiaries as a result of a contract. Both the Burraclaw plaintiffs were beneficiaries, and therefore they are the type of entities or persons that can bring the derivative suit. I think Burraclaw has a challenge to overcome. Well, you're right, Your Honor, that a beneficiary can bring suit under 1132A-2. But an important point is that Burraclaw was not an 1132A-2 case. That was an 1132A-1B case for individual benefits. Thank you, Your Honor, for their very helpful briefing, their excellent arguments. The court will take the matter under advisement.